IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 1:06-cr-430 |
| | ) Civil Action No. 1:16-cv-743 |
| ALBERT G. TAYLOR | ) |

## AMENDED MEMORANDUM OPINION[1]

Defendant, by counsel, has filed a motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the sentence imposed on him a decade ago on the ground that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), operates to invalidate his conviction for one count of using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). At issue on the government's motion to dismiss is whether defendant's § 2255 motion is untimely pursuant to the one-year statute of limitations set forth in 28 U.S.C. § 2255(f). Also at issue, assuming defendant's § 2255 motion is timely, is whether *Johnson* operates to invalidate defendant's § 924(c) conviction. Because the matter has been fully briefed and the facts and law are fully set forth in the existing record, neither oral argument nor an evidentiary hearing would aid the decisional process.[2] Accordingly, the matter is now ripe for disposition.

---

[1] This amended memorandum opinion alters the analysis of Part II.B and C, *infra*. The amended analysis does not affect the outcome of this matter. The Order denying defendant's § 2255 motion, granting the government's motion to dismiss, and declining the issuance of a certificate of appealability (Doc. 18) remains in full force and effect.

[2] Importantly, 28 U.S.C. § 2255 provides that a hearing is not necessary when "the motion and the files of the case conclusively show that the prisoner is entitled to no relief." Here, a hearing is not necessary because the record conclusively compels the conclusion that defendant's § 2255 motion is untimely and fails on the merits.

**I.**

On December 12, 2006, defendant pled guilty to one count of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); the predicate offense for this count is a violation of 18 U.S.C. § 1951 (Hobbs Act robbery). Specifically, defendant admitted, *inter alia*, that on or about December 13, 2014, defendant possessed and discharged a firearm in furtherance of a cocaine-related robbery in Centreville, Virginia, in the Eastern District of Virginia. On December 21, 2006, after defendant pled guilty to this crime, defendant received a sentence of 120 months' imprisonment, followed by five years' supervised release.

Pursuant to § 924(c), a defendant who "during and in relation to any crime of violence ... uses or carries a firearm ... shall, in addition to the punishment provided for such crime of violence ... if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(A). In order to prove a violation of § 924(c), the government must establish: (1) that the defendant possessed and discharged a firearm; and (2) that he did so during and in relation to a crime of violence. *United States v. Strayhorn*, 743 F.3d 917, 922 (4th Cir. 2014). Under 18 U.S.C. § 924(c)(3), a "crime of violence" is any felony:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* Subsection (A) and subsection (B) of § 924(c)(3) are commonly referred to as the "force clause" and the "residual clause," respectively.

On June 26, 2015, nearly six years after defendant's sentence was imposed, the Supreme Court issued its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), addressing the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

Specifically, the Supreme Court in *Johnson* held that the ACCA residual clause—the provision that defines a "violent felony" to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)—is unconstitutionally vague, and therefore that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. Thereafter, on April 18, 2016, the Supreme Court held that *Johnson* announced a new "substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

On June 23, 2016, shortly after the Supreme Court's decision in *Welch*, defendant filed a motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the sentence imposed on him for his § 924(c) conviction on the ground that the Supreme Court's decision in *Johnson* operates to invalidate this conviction. Specifically, defendant contends that the residual clause of § 924(c) is indistinguishable from the ACCA residual clause, and accordingly, the residual clause of § 924(c) is unconstitutionally vague under the rationale of *Johnson*.

On July 14, 2016, the government filed a motion to dismiss defendant's § 2255 motion on the ground that collateral review of defendant's sentence or conviction is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2255(f).

## II.

The government's motion to dismiss raises a threshold issue as to whether defendant's § 2255 motion is timely. Because defendant filed his § 2255 motion approximately a decade after his sentences of conviction and judgment became final, his § 2255 motion would typically be barred by the one-year limitations period set forth in 28 U.S.C. § 2255(f)(1). Yet, defendant contends that his § 2255 motion is timely because pursuant to 28 U.S.C. § 2255(f)(3), the

limitations period runs from June 26, 2015, the date *Johnson* was decided. In this regard, § 2255(f)(3) provides that a one-year limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.*[3]

The Fourth Circuit has explained that "to obtain the benefit of the limitations period stated in § 2255(f)(3), [a movant] must show: (1) that the Supreme Court recognized a new right; (2) that the right 'has been ... made retroactively applicable to cases on collateral review'; and (3) that [the movant] filed his motion within one year of the date on which the Supreme Court recognized the right." *United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012) (quoting § 2255(f)(3)). Importantly, however, there is a question as to the meaning of the term "right" as used in § 2255(f)(3). As neither the Supreme Court nor the Fourth Circuit has grappled with this question,[4] it is appropriate, indeed necessary, to do so here.[5]

The Supreme Court has made clear that when interpreting a statute, "the starting point ... is the language itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). In this regard, it is axiomatic that "[i]f the statutory language is plain," a court "must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). At the same

---

[3] *See also Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (explaining that the § 2255(f)(3) limitation period runs from the date on which the Supreme Court recognizes the new right, not the date on which the new right was "made retroactive[]").

[4] Indeed, the Fourth Circuit has made clear that it "ha[s] not yet had occasion to establish a framework for determining, under [§ 2255(f)(3)], whether and when a Supreme Court decision constitutes the initial recognition of a 'newly recognized' right." *United States v. Hopkins*, 268 F.3d 222, 224-25 (4th Cir. 2001).

[5] It is worth noting, however, that a recent district decision squarely addressed the ambiguity of the term "right" in § 2255(f)(3). *See United States v. Le*, --- F. Supp.3d ---, Criminal No. 1:03-cr-48, Civil Action No. 1:16-cv-812 (E.D. Va. Sept. 8, 2016) (Amended Memorandum Opinion). Indeed, the analysis in *Le* is reflected here essentially verbatim.

time, the Supreme Court has recently explained that statutory interpretation properly proceeds "with reference to the statutory context, 'structure, history, and purpose,' " as well as "common sense." *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (quoting *Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013)). Thus, "although the analysis properly focuses on the text, the analysis is not necessarily limited to the text." *Angiotech Pharms. Inc. v. Lee*, --- F. Supp.3d ---, No. 1:15-cv-1673, 2016 WL 3248352, at *9 (E.D. Va. June 8, 2016).

### A.

Statutory analysis of § 2255(f)(3) properly begins with the text and the "fundamental" principle that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). In this regard, the term "right" as used in § 2255(f)(3) is generally understood to refer to a legally protected interest that one may claim against another.[6] Yet, it has long been recognized that the term "right" is ambiguous;[7] depending on the context, for example, a right can be framed broadly or narrowly. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 719-21 (1997) (cautioning that courts must articulate fundamental rights narrowly in the substantive due process context). As

---

[6] *See, e.g., Webster's Third New International Dictionary* 1955 (1993) (defining "right" as "something that one may properly claim"); *Black's Law Dictionary* 1517 (10th ed. 2014) (defining "right" as " [a] legally enforceable claim that another will do or will not do a given act; a recognized and protected interest the violation of which is wrong ... .").

[7] Indeed, in an effort to remedy the "indiscriminate use of the term 'right,' " Wesley Newcomb Hohfeld developed a well-known taxonomy of the incidents of that term. *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L. J. 16, 31 (1913). Specifically, Hohfeld explained, *inter alia*, that a "right" can take various forms, including: (i) a "privilege" to do something unaccompanied by a duty to do that thing (*e.g.*, a right to walk freely in the park), (ii) a "claim" against another who has a duty to the right-holder (*e.g.*, a contractual obligation), (iii) a "power" of a superior to alter the rights of his subordinates (*e.g.*, a ship captain's authority vis-à-vis his deckhands), or (iv) an "immunity" of a subordinate not to have his rights altered by a superior (*e.g.*, a citizen's individual right vis-à-vis his government). *See id.* at 30-54. That the term "right" can take so many different forms confirms the ambiguity of that term.

relevant here, the term "right" in § 2255(f)(3) could refer (i) to the right asserted by defendant not to be incarcerated pursuant to § 924(c) in light of *Johnson*, or (ii) the broader principle underlying *Johnson* that due process requires fair notice of prohibited conduct.

The choice between these alternatives is significant here. If "right" refers to a broad principle rather than a narrow application of that principle to a specific statute, then the "right" on which defendant relies is not "newly recognized," as § 2255(f)(3) requires, and therefore defendant cannot avail himself of § 2255(f)(3)'s limitations period. This is so because the broad principle at issue in *Johnson*—the Due Process Clause's requirement of fair notice of prohibited conduct—is hardly new. Indeed, the Supreme Court noted in *Johnson* that "[t]he prohibition of vagueness in criminal statutes is a well-recognized requirement." *Johnson*, 135 S. Ct. at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). Thus, the ambiguity as to the scope of the term "right" in § 2255(f)(3) must be resolved.

To that end, it is appropriate to turn to § 2255(f)(3)'s historical context. In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, § 104, 110 Stat. 1214 (1996), which amended the law of habeas corpus in various ways, such as the enactment of the statute of limitations scheme set forth in § 2255(f). Importantly, the AEDPA was enacted in 1996 against a background of pre-existing Supreme Court habeas doctrine, including the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), which established the circumstances in which a Supreme Court decision applies retroactively to cases on collateral review. Specifically, the Supreme Court in *Teague* held that "a case announces a new rule" for the purpose of retroactive application only "if the result was not dictated by precedent existing at the time when defendant's conviction became final." *Id*. at 301. Such a "new rule" applies retroactively to cases on collateral review only if the rule (i) places certain

kinds of private, primary individual conduct beyond the power of the criminal law authority to proscribe or (ii) is a watershed rule of criminal procedure. *Id.* at 311.

There can be no doubt that Congress was aware of the *Teague* framework when it enacted the AEDPA in 1996, as (i) *Teague* was—and is—the leading case on the non-retroactivity doctrine,[8] (ii) *Teague* was an interpretation of the very statutory scheme Congress amended with the AEDPA,[9] (iii) several provisions of the AEDPA contain language that tracks the *Teague* framework,[10] and (iv) the legislative history refers to the principles of habeas retroactivity on collateral review.[11] Thus, the *Teague* framework sheds light on Congress's choice of language in § 2255(f)(3). Indeed, the language of § 2255 incorporates the *Teague* framework in some respects and deviates from that framework in other respects. Of particular relevance here, § 2255(f)(3) specifically incorporates the *Teague* framework insofar as that provision refers to Supreme Court decisions that have been "made retroactively applicable to cases on collateral review," but § 2255(f)(3) deviates from the language of *Teague* insofar as

---

[8] Indeed, a survey of Supreme Court case law reveals that by 1996, the Supreme Court had already cited *Teague* in over 50 Supreme Court decisions. *See, e.g., Harris v. Reed*, 109 S. Ct. 1038, 1047 (1989); *Holland v. Illinois*, 110 S. Ct. 803, 810 (1990); *McCleskey v. Zant*, 111 S. Ct. 1454, 1468 (1991); *Rufo v. Inmates of Suffolk Cnty. Jail*, 112 S. Ct. 748, 772 (1992); *Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993); *Schiro v. Farley*, 114 S. Ct. 783, 788 (1994); *Goeke v. Branch*, 115 S. Ct. 1275, 1275 (1995).

[9] *See Danforth v. Minnesota*, 552 U.S. 264, 278 (2008) (noting that *Teague* was a decision based on statutory interpretation).

[10] *See, e.g.*, 28 U.S.C. § 2255(h)(2) ("a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court"); 28 U.S.C. § 2254(e)(2)(A)(i) ("a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court").

[11] *See, e.g.*, H.R. Rep. 104-23, 1995 WL 56412, at *9 (Feb. 8, 1995) (noting that the § 2255 limitations period "preserv[es] the availability of review when ... the United States Supreme Court recognizes a new right that is retroactively applicable").

§ 2255(f)(3) refers to a newly recognized "*right*" rather than a "new *rule*," the term used by the Supreme Court in *Teague* and its progeny.[12]

There are compelling reasons to think Congress deliberately selected the term "right" in § 2255(f)(3) as a deviation from the *Teague* framework. For one, other provisions enacted as part of the AEDPA directly incorporate the relevant language of *Teague*. Section 2255(h)(2), for example, stands in stark contrast to the language of § 2255(f)(3), as § 2255(h)(2) provides that "[a] second or successive motion must be certified ... by [an appellate panel] to contain ... a new *rule* of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." *Id.* (emphasis added). Similarly, 28 U.S.C. § 2254(e)(2)(A)(i) provides that in the context of a § 2254 petition, a court may hold an evidentiary hearing if the petitioner's claim is premised on "a new *rule* of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *Id.* (emphasis added). Importantly, where provisions of the same statute use different terms, it is presumed "that the enacting legislature meant those terms to have at least slightly different meanings." Caleb Nelson, *Statutory Interpretation* 88 (2011).[13] Thus, because Congress employed the term "rule" in clear reference to the *Teague* framework in other provisions of the AEDPA, there is good reason to think the term "right" in § 2255(f)(3) means something else.

That Congress intended for § 2255(f)(3) to deviate in certain respects from the *Teague* framework finds further support in another phrase of that provision. Specifically, a qualifying

---

[12] *See, e.g.*, *Teague*, 489 U.S. at 301 (referring to a "new rule"); *Stringer v. Black*, 503 U.S. 222, 227 (1992) (repeatedly referring to a "new rule" when applying the *Teague* framework).

[13] This presumption is a corollary to the well-settled "presumption of consistent usage," Nelson, *supra*, at 88, which the Supreme Court has recently characterized as a "rule of thumb that a term generally means the same thing each time it is used." *United States v. Castleman*, 134 S. Ct. 1405, 1417 (2014).

"right" under § 2255(f)(3) must have been "recognized *by the Supreme Court.*" *Id.* (emphasis added). In other words, § 2255(f)(3) applies only where the Supreme Court—rather than a lower court—has recognized a new right. By contrast, under the *Teague* framework existing at the time the AEDPA was enacted, a lower court decision could constitute a "new rule." *See, e.g., Gilmore v. Taylor*, 508 U.S. 333, 344 (1993) (concluding that a "rule announced" in a Seventh Circuit decision was "new" under the *Teague* framework). Thus, if Congress had said in § 2255(f)(3) that any new rule would reopen the one-year limitations period, then under *Teague* as understood in 1996, lower court rulings could have triggered § 2255(f)(3). Instead, Congress's language in § 2255(f)(3) triggers new filing periods only when rights are "newly recognized by the Supreme Court," which reflects that Congress intended for new filing periods to be available in fewer instances than whenever a new rule in the *Teague* sense is announced. This lends credence to the conclusion that Congress's choice of the term "right" rather than "rule" in § 2255(f)(3) was also a deviation from the *Teague* framework intended to limit application of § 2255(f)(3).

If Congress intended for "right" and "rule" to have different meanings, as the foregoing analysis suggests, there is good reason to conclude that "right" should be interpreted as a broad principle rather than as a narrow application of a principle to a particular set of facts or to a particular statute. To begin with, the terms "right" and "rule," as generally understood, have distinct meanings. A "right," as already noted, is generally understood to mean a protected interest that one may claim against another,[14] whereas a "rule" is generally understood to mean a principle that is a statement of a legal right as applied to a particular set of facts.[15] This

---

[14] *See supra*, n.6.

[15] *See, e.g., Webster's Third New International Dictionary* 1986 (1993) (defining "rule" as a "legal precept applied to a given set of facts as stating the law applicable to a case"); *Black's*

understanding accords with the Supreme Court's use of "rule" in the *Teague* framework. For example, in *Johnson*, the Supreme Court applied a broad right—the right to fair notice of prohibited conduct—to a particular statute, and as a result, announced a new *rule* made retroactive under *Teague*, namely that the ACCA residual clause is unconstitutional. *See Johnson*, 135 S. Ct. at 2556-57, 2563. Thus, if a "rule" is a narrow application of a legal right, and if "rule" and "right" have different meanings, then under a plain reading of § 2255(f)(3), the term "right" refers to a general protected interest that a defendant may claim rather than a particular application of that protected interest to a particular set of facts. Under this reading of the statute, § 2255(f)(3) does not apply to defendant's case because the Supreme Court in *Johnson* did not recognize a new right, but instead applied a well-settled right to a particular statute, and therefore announced a new rule.

As already noted, the Supreme Court and the Fourth Circuit have not yet grappled with the ambiguity of the term "right" in § 2255(f)(3).[16] Nor has any decision of another circuit been found that adequately addresses the issue. The widespread inattention may have a simple explanation; when the Supreme Court announces a new rule made retroactive under the *Teague*

---

*Law Dictionary* 1529 (10th ed. 2014) (defining "rule" as "an established and authoritative standard or principle").

[16] Although the Fourth Circuit has not squarely addressed the ambiguity of the term "right" in § 2255(f)(3), it has noted that when determining whether the Supreme Court has issued a newly recognized right pursuant to § 2255(f)(3), *Teague* "is not controlling," although it is "instructive." *Hopkins*, 268 F.3d at 225 n.2. In this regard, the Fourth Circuit noted that under *Teague* a new rule is, in a certain sense, "a narrower concept than the initial recognition of [a] new right[]" pursuant to § 2255(f)(3) because the term "new rule" in the *Teague* sense is limited to new *constitutional* rules, whereas a new "right" pursuant to § 2255(f)(3) is not limited to new *constitutional* rights, but also includes new statutory rights. *Id.*

framework, it usually also announces a new right,[17] and therefore, the distinction between a right

and rule is not typically material to the application of § 2255(f)(3). Thus, in most instances it is

unnecessary to resolve the ambiguity of the scope of the term "right" in § 2255(f)(3).

Importantly, however, with respect to the Supreme Court's recent decision in *Johnson*,

the distinction between a right and a rule is material to the application of § 2255(f)(3). This is so

because as already noted, the *right* in issue in *Johnson* was not a new right, but was instead the

well-settled prohibition against unconstitutional vagueness in criminal statutes, whereas the

application of that right resulted in a newly recognized *rule*, namely that the ACCA residual

clause is unconstitutionally vague. *See Johnson* 135 S. Ct. at 2556, 2557 ("Our cases establish

that the [g]overnment violates [the Due Process Clause] by taking away someone's life, liberty,

or property under a criminal law so vague that it fails to give ordinary people fair notice of the

conduct it punishes, or so standardless that it invites arbitrary enforcement.") (citing *Kolender v.

Lawson*, 461 U.S. 352, 357-58 (1983)).[18] Thus, under a construction of the term "right" in

_____

[17] For example, in *Miller v. Alabama*, the Supreme Court recognized a new Eighth Amendment *right* prohibiting the imposition of mandatory life without parole for juvenile homicide offenders, as well as a new *rule* applying that right to the particular statute in issue. 132 S. Ct. 2455, 2475 (2012). The holding in *Miller* was made retroactive under the *Teague* framework in *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016). There, the Supreme Court had no occasion to address the distinction between a right and rule because under the *Teague* framework, there is no material difference between a new right and a new rule. The significance of distinguishing between these term arises here only because Congress used the term "right" rather than the term "rule" in § 2255(f)(3).

[18] Although the right prohibiting unconstitutional vagueness in criminal statutes is well-settled, the Supreme Court's articulation of the vagueness doctrine is of little help when determining whether a statute is vague. Indeed, as thoughtful judges have long recognized, unconstitutional indefinites "is itself an indefinite concept." *Winters v. New York*, 333 U.S. 507, 524 (1948) (Frankfurter, J. dissenting). Commentators have also noted the indeterminacy of the language of the vagueness doctrine. *See, e.g.,* John Calvin Jeffries, Jr. *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 196 (1985) ("The difficulty [in applying the vagueness doctrine] is that there is no yardstick of impermissible indeterminacy."); Anthony G. Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev.

§ 2255(f)(3) that distinguishes that term from the term "rule" as used in the *Teague* framework, the Supreme Court's decision in *Johnson* did not trigger a new one-year limitations period pursuant to § 2255(f)(3) because that decision simply recognized a *new rule*, which was made retroactive in *Welch*, but did not recognize a *new right* within the meaning of § 2255(f)(3), as the right asserted by the petitioner in *Johnson* was the well-settled right not to be convicted or sentenced pursuant to an unconstitutionally vague law. In this regard, the Supreme Court's decision in *Johnson* brings the ambiguity of the term "right" in § 2255(f)(3) to the surface, perhaps for the first time.

## B.

Of course, there are also compelling reasons *not* to read "right" and "rule" as taking different meanings in § 2255. As just discussed, the subtle distinction between a right and a rule is cast into sharp relief only because the Supreme Court's decision in *Johnson* constitutes a retroactive rule that is not rooted in the recognition of a new constitutional right. Indeed, before *Welch* the Supreme Court had never held that a new constitutional rule based on procedural due process principles constituted a substantive rule for purposes of retroactivity on collateral review. *See* Br. of Court-Appointed *Amicus Curiae* at 29, *United States v. Welch*, No. 15-6418. Thus, it is not implausible to suspect that Congress, when it enacted AEDPA, assumed that every new retroactive rule under *Teague* would *always* announce a new right, and thus that the terms "right" and "rule" were essentially congruent.

---

67, 74 (1960) ("[V]agueness alone ... does not provide a full and rational explanation of the case development."). Indeed, some commentators have argued that many vagueness determinations have little to do with vague language and are best understood as resting on two independent constitutional requirements: (i) that "all crime must be based on conduct," and (ii) that "there must be a defensible and predictable correlation between the established meaning of a criminal prohibition and the conduct to which it is applied." Peter W. Low & Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2053 (2015).

Of course, "the passage of time can undermine the premises behind a particular statute in ways that the enacting legislature did not expect." Nelson, *supra*, at 926-27. Here, *Welch* makes clear that if Congress enacted § 2255(f)(3) on the premise that every retroactive new rule would also recognize a new right, that premise is no longer intact. When such situations arise, one interpretative approach is to view the formula of words Congress enacted as set in stone and to apply the traditional canons of interpretation to the text of the statute. *See id.* at 927. Here, this approach, as reflected in the analysis articulated in Part II-A, *supra*, leads to the conclusion that § 2255(f)(3) categorically does not apply to claims arising under *Johnson*. An alternative interpretative approach is to "adjust" the understanding of the formula of words enacted so as "best to continue serving the mix of purposes" that Congress was trying to advance at the time of enactment. *See id.* at 927. Under this latter approach, there are sound reasons to conclude that the term "right" in § 2255(f)(3) should be construed to mean "rule" in the *Teague* sense.

For one, this construction avoids an anomalous result that would follow from the construction of § 2255(f)(3) articulated in Part II-A, *supra*. Specifically, under an interpretation of "right" that distinguishes that term from the term "rule" in the *Teague* sense, no defendant could bring a § 2255 motion relying on *Johnson* pursuant to § 2255(f)(3). Such a conclusion, though seemingly consistent with the text of the statute, would be at odds with the spirit of the Supreme Court's decision in *Welch*, which has the effect of enabling prisoners sentenced under the ACCA residual clause before *Johnson* was decided to bring collateral attacks on their sentences on the basis of *Johnson*. *See Welch*, 136 S. Ct. at 1268. Indeed, it could be argued that the Supreme Court in *Welch* rejected by implication a construction of the term "right" that

precludes the effective vindication of most § 2255 motions premised on *Johnson*[19] in favor of a construction that equates the term "right" with the term "rule" in the *Teague* sense.

In this regard, the result in *Welch* comports only with an interpretation of § 2255(f)(3) that takes the term "right" to mean "rule" in the *Teague* sense. In *Welch*, the petitioner had been sentenced pursuant to the ACCA residual clause in 2010, and did not file his § 2255 motion until December 2013, long after the expiration of the general one-year limitations period set forth in § 2255(f)(1). *See id.* at 1262-63. Thus, in *Welch*, the petitioner's § 2255 motion was timely only if petitioner was relying on § 2255(f)(3).[20] Importantly, the Supreme Court in *Welch* made no mention that petitioner could not rely on § 2255(f)(3) pursuant to *Johnson*. Thus, although the Supreme Court in *Welch* did not squarely address the issue, the result reached in *Welch* rests on the premise that once *Johnson* was made retroactive, a new one-year statutory period began to run pursuant to § 2255(f)(3); without this premise, the petitioner's § 2255 motion would have been untimely. Accordingly, it appears that the Supreme Court in *Welch* rejected by implication the conclusion that the Supreme Court in *Johnson* did not recognize a new right for purposes of § 2255(f)(3).

---

[19] Importantly, not all § 2255 motions premised on *Johnson* would necessarily be precluded under this construction of § 2255(f)(3), as such motions may well be timely pursuant to one of the other three provisions set forth in § 2255(f). Nonetheless, such a construction would significantly curtail the reach of *Johnson* and *Welch*.

[20] Although there are two other exceptions to the general one-year limitations period set forth in § 2255(f), it does not appear that either of these two exceptions applied to the petitioner in *Welch*. *See* 28 U.S.C. § 2255(f)(2) (providing an exception to the general one-year limitations period for up to one year following "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"); 28 U.S.C. § 2255(f)(4) (providing an exception to the general one-year limitations period for one year following "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence").

Moreover, equating the term "right" in § 2255(f)(3) with the term "rule" in the *Teague* sense finds further support in the operation of § 2255(f)(3). Specifically, § 2255(f)(3) operates in connection with the *Teague* non-retroactivity doctrine insofar as a "newly recognized" right opens a new one-year statutory window for prisoners only "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* In other words, the initiation of a new one-year limitations period pursuant to § 2255(f)(3) is a practical effect of a determination that under the *Teague* framework, a new rule announced by the Supreme Court is retroactive. For example, suppose at some point in the future, the Supreme Court holds, as defendant contends here, that the residual clause of § 924(c) is unconstitutionally vague based on the rationale of *Johnson*. If a court subsequently concludes that this new Supreme Court holding is retroactive under *Teague*, then pursuant to § 2255(f)(3), a new one-year statutory window would open for prisoners serving sentences for § 924(c) convictions so long as the term "right" means "rule" as used in the *Teague* sense.

In sum, it is appropriate here to construe the term "right" in § 2255(f)(3) to mean "rule" as that term is used in the *Teague* framework. Accordingly, the question presented is whether a defendant convicted under the residual clause of § 924(c) may invoke the § 2255(f)(3) year-long limitations window triggered by the substantive rule announced in *Johnson*—that the residual clause of the ACCA is unconstitutionally vague. Defendant argues in essence that the rule announced by the Supreme Court in *Johnson* also extends to the residual clause of § 924(c), and thus that the Supreme Court announced a new rule made retroactively available to defendant's case, pursuant to § 2255(f)(3).

## C.

As the government correctly contends, the breadth of the rule established in *Johnson* does not cover § 924(c). Put simply, defendant may not avail himself of § 2255(f)(3), because the Supreme Court in *Johnson* did not announce a new rule with respect to the residual clause of § 924(c). Indeed, the only circuits that have squarely addressed the issue concluded that *Johnson* does not invalidate the residual clause of § 924(c). *See United States v. Hill*, --- F.3d ---, 2016 WL 4120667, at *8 (2d Cir. Aug. 3, 2016) (holding that *Johnson* is inapplicable to the residual clause of § 924(c) because "Section 924(c)(3)(B) does not involve the double-layered uncertainty present in *Johnson*"); *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016) (holding that the Supreme Court's decision in *Johnson* did not render the residual clause of § 924(c) unconstitutionally vague because that clause "is considerably narrower than the statute invalidated ... in *Johnson*, and because much of *Johnson*'s analysis does not apply to [the residual clause of § 924(c)]"). And although the Fourth Circuit has not squarely addressed the issue, it has noted in dictum that although "the Supreme Court held unconstitutionally vague the [ACCA residual clause], ... the [Supreme] Court had no occasion to review the ... residual clause [of § 924(c)]." *United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015).

Similarly, the Fourth Circuit sitting en banc recently noted that it is unclear whether *Johnson* operates to invalidate the residual clause of § 924(c). *See United States v. Graham*, --- F.3d ---, No. 12-4659, 2016 WL 3068018, *1 n.1 (4th Cir. May 31, 2016) (en banc). Recent district court decisions also reflect uncertainty whether the rationale of *Johnson* operates to invalidate the residual clause of § 924(c), as there is some question whether the categorical

approach, a necessary premise to the result reached in *Johnson*,[21] applies in the context of § 924(c).[22]

In sum, defendant's argument—that the residual clause of § 924(c) is unconstitutionally vague—simply was not a rule announced in *Johnson*. Accordingly, defendant's § 2255 motion must be dismissed as untimely because, although § 2255(f)(3) did grant a year-long window for defendants with *Johnson* claims, § 2255(f)(3) does not apply here.

### III.

Even assuming, *arguendo*, that defendant's § 2255 motion is timely pursuant to § 2255(f)(3), the motion nonetheless fails because contrary to defendant's contention, his conviction does not depend on the residual clause of § 924(c).[23] This is so because the predicate

---

[21] *See Johnson*, 135 S. Ct. at 2557 (applying the categorical approach to the ACCA residual clause and explaining that "[u]nder the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion' ") (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)); *see also* Low & Johnson, *supra* n.18, at 2103-04 (explaining that without the "categorical approach as its operating premise, the [Supreme] Court's vagueness analysis [in *Johnson*] would have been significantly different").

[22] In this regard, several courts have concluded that the categorical approach does not apply to the residual clause of § 924(c) in at least some contexts. *See, e.g., United States v. McDaniels*, 147 F.Supp.3d 427, 430-33 (E.D. Va. 2015) (holding that "the categorical approach does not apply on a pre-trial motion to dismiss an indictment, and therefore the question whether the commission of a particular Hobbs Act robbery qualifies as a § 924(c) crime of violence is properly submitted to a jury properly instructed as to the definition of a crime of violence set forth in § 924(c)(3)"); *United States v. Wells*, No. 2:14-cr-00280, 2015 WL 10352877, at *4 (D. Nev. Dec. 30, 2015) (relying on the reasoning of *McDaniels* to conclude "that the categorical approach does not apply with respect to a pretrial motion to dismiss charges brought under 18 U.S.C. § 924(c)"); *United States v. Monroe*, --- F. Supp.3d ---, No. 15-74, 2016 WL 270316, at *4 (W.D. Pa. Jan. 21, 2016) (same); *United States v. Church*, No. 1:15-CR-24-TLS, 2015 WL 7738032, at *5-6 (N.D. Ind. Dec. 1, 2015) (holding that the categorical approach does not apply to § 924(c)); *United States v. Checora*, --- F. Supp.3d ---, No. 2:14cr457DAK, 2015 WL 9305672, *2 (D. Utah Dec. 21, 2015) (same).

[23] Although the government's motion to dismiss does not address the merits of defendant's § 2255 motion, it is appropriate to do so here.

offense for defendant's § 924(c) conviction—namely, Hobbs Act robbery—is a crime of violence pursuant to the force clause of § 924(c), which defines a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

In opposition to the conclusion reached here, defendant contends that Hobbs Act robbery does not categorically qualify as a crime of violence pursuant to the force clause of § 924(c) because Hobbs Act robbery does not, in a strict sense, entail the use or threatened use of physical force against another. This argument fails because (i) the argument is premised on the flawed assumption that the "categorical approach"[24] applies to § 924(c) convictions pursuant to a plea agreement, and (ii) even assuming, *arguendo*, that the categorical approach applies in this context, Hobbs Act robbery qualifies as a crime of violence pursuant to the force clause of § 924(c) because Hobbs Act robbery entails the use or threatened use of physical force against another.

**A.**

The "categorical approach," as developed in *Taylor v. United States*, 495 U.S. 575, 598-602, does not apply when determining whether a crime to which a defendant pled guilty qualifies as a crime of violence pursuant to § 924(c). Accordingly, the question whether Hobbs Act robbery qualifies as a § 924(c) crime of violence depends on the facts to which defendant pled guilty, not on an abstract analysis of the elements of Hobbs Act robbery, as would be required under the categorical approach. *See id.*

In this regard, "it is important to recognize that the categorical approach is a judicially devised mode of analysis born and developed in the sentencing context for the purpose of

---

[24] *Taylor v. United States*, 495 U.S. 575, 600 (1990).

ensuring that defendants are not punished for facts that are not found beyond a reasonable doubt by a jury" or that are not admitted by a defendant by virtue of a plea agreement. *United States v. McDaniels*, 147 F.Supp.3d 427, 430 (E.D. Va. 2015). Indeed, the Supreme Court in *Taylor* introduced the categorical approach in the context of the ACCA. 495 U.S. at 600. There, the Supreme Court held that a sentencing court must employ a "categorical approach" in determining whether a crime counts as a predicate offense for purposes of an ACCA sentencing enhancement for violations of 18 U.S.C. § 922(g). Specifically, *Taylor* teaches that a sentencing court may " 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's [prior offense] and *not* 'to the particular facts underlying [the prior offense]' " in determining whether the prior offense constitutes an ACCA predicate offense. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor*, 495 U.S. at 600).[25] Put another way, "a court assesses whether a crime qualifies as a violent felony [under the ACCA] in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (internal quotation marks and citation omitted).[26] Importantly, the Supreme Court in *Taylor* justified the categorical

---

[25] If a defendant was previously convicted pursuant to a statute with elements that are equivalent or narrower in scope to the elements of the "generic ACCA crime, then the prior conviction can serve as an ACCA predicate." *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 599). Yet, when the relevant statute "sweeps more broadly than the generic [ACCA] crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." *Id.*

[26] Importantly, sentencing courts may apply a modified categorical approach to crimes that are "divisible" insofar as "they set out elements in the alternative and thus create multiple versions of the crime," and under this approach, "courts may look beyond the statutory text and consult a limited set of documents in the record" in order to determine the nature of the crime charged. *Omargharib v. Holder*, 775 F.3d 192, 197, 198 (4th Cir. 2014) (internal quotation marks and citations omitted). Relevant documents include the "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury

approach in the context of the ACCA on the basis of statutory text, legislative history, and most importantly, practical considerations involving the difficulty of re-trying the factual basis for a prior conviction in a subsequent sentencing proceeding. *See Taylor*, 495 U.S. at 600-02. Since *Taylor*, the Supreme Court and the Fourth Circuit have consistently applied the categorical approach to numerous ACCA sentencing determinations.

The Supreme Court has also applied the categorical approach, as articulated in *Taylor*, in the context of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* Specifically, as the Supreme Court has explained, "[w]hen the government alleges that a state conviction qualifies as an aggravated felony' under the INA," the categorical approach applies when "determin[ing] whether the state offense is comparable to an offense listed in the INA." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185-87 (2007)). Importantly, the categorical approach applies in the context of the INA because the text of the INA, like the text of the ACCA, "asks what offense the noncitizen was [previously] 'convicted' of, ... not what acts he committed." *Id.* at 1686 (citing 8 U.S.C. § 1227(a)(2)(A)(iii)). And as in the ACCA context, application of the categorical approach in the INA context avoids the practical difficulty of re-trying the factual basis for a prior conviction in a subsequent proceeding. *Cf. Taylor*, 495 U.S. at 600-02.

Until recently, application of the categorical approach was limited to the ACCA sentencing context and to the INA context. Yet, in 2015, the Fourth Circuit, for the first time, applied the categorical approach in another context. Specifically, the Fourth Circuit applied the categorical approach in a case involving the question whether sex trafficking by force, fraud, or coercion qualified as a § 924(c) crime of violence. *See United States v. Fuertes*, 805 F.3d 485,

---

instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010) (citations omitted).

499 (4th Cir. 2015). There, the Fourth Circuit reasoned that the sex trafficking offense "allows for both violent and nonviolent means of commission," and therefore does not qualify as a § 924(c) crime of violence under the categorical approach. *Id.* at 499.[27]

Defendant argues that because the Fourth Circuit applied the categorical approach in *Fuertes*, it follows that the categorical approach must be applied to all determinations whether a crime qualifies as a § 924(c) crime of violence. Yet, contrary to defendant's contention, a close examination of *Fuertes* reveals that the holding of *Fuertes* is significantly narrower than defendant suggests and that *Fuertes* does not compel application of the categorical approach to § 924(c) in the present case.

Importantly, the § 924(c) issue arose in *Fuertes* as a result of a jury instruction. *Id.* at 497. Specifically, the defendant filed a post-trial motion for judgment of acquittal or a new trial with respect to his § 924(c) conviction on the ground that the district court erred in instructing the jury that "sex trafficking by force, fraud, or coercion is *categorically* a crime of violence." *Id.* (emphasis added). In other words, rather than instructing the jury to determine whether the particular defendant's commission of sex trafficking by force, fraud, or coercion qualified as a § 924(c) crime of violence, the district court instructed the jury that, as a matter of law, the sex trafficking offense was a § 924(c) crime of violence. In this regard, the district court *categorically* determined that the sex trafficking offense constitutes a crime of violence; indeed, the district court essentially applied the categorical approach when instructing the jury.

---

[27] The Fourth Circuit has also applied the rationale of *Fuertes* in an unpublished decision. *See United States v. Naughton*, 621 F. App'x 170, 177-78 (4th Cir. 2015) (unpublished) (citing the categorical approach and relying on *Fuertes* to hold that a district court's jury instruction that a sex trafficking conspiracy offense was categorically a § 924(c) crime of violence amounted to plain error).

On appeal, the jury instruction in *Fuertes* presented two issues: (i) whether a district court may instruct a jury that a predicate offense categorically qualified as a § 924(c) crime of violence, and (ii) assuming a district court may so instruct a jury, whether the district court's instruction that the particular sex offense in issue categorically qualified as a § 924(c) crime of violence amounted to plain error. Importantly, the Fourth Circuit had no occasion to address the first question, as the Fourth Circuit held that the district court had committed plain error with respect to the second question, and accordingly the Fourth Circuit vacated the defendant's § 924(c) conviction and remanded for entry of acquittal on that count. *Id.* at 499-501.[28] Thus, in essence, the Fourth Circuit in *Fuertes* held that a court may not instruct a jury that a crime qualifies as a § 924(c) crime of violence as a matter of law where the predicate offense does not categorically qualify as a crime of violence. Importantly, the Fourth Circuit in *Fuertes* did not squarely address the first order question whether a district court may ever instruct a jury that a predicate offense categorically qualifies as a § 924(c) crime of violence or whether a district court must instead allow a properly instructed jury to decide whether the particular commission of a predicate offense qualifies as a § 924(c) crime of violence. As this question remains unresolved, it must be addressed here.

In this regard, it is inappropriate—and indeed perhaps unconstitutional—to apply the categorical approach to determine whether a predicate offense is a "crime of violence" in the context of § 924(c) jury instructions, and by extension in the context of the entry of a guilty plea. This is so because the phrase "crime of violence" is an element of § 924(c)—rather than a

---

[28] Similarly in *Naughton*, the district court instructed the jury that conspiracy to commit sex trafficking *categorically* qualified as a § 924(c) crime of violence, and the defendant filed a post-trial motion for judgment of acquittal, which the district court denied. *Naughton*, 621 F. App'x at 172-73. Following the reasoning of *Fuertes*, the Fourth Circuit held that the district court's jury instruction amounted to a plain error and vacated the § 924(c) conviction. *Id.* at 177-79.

sentencing enhancement—and therefore "must be submitted to a jury and found beyond a reasonable doubt." *See Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013). Some offenses may be *categorically* crimes of violence, while others may be *categorically* not crimes of violence; that is, the commission of some crimes may always be violent, while the commission of other may never be violent.[29] In any event, the task of assessing whether the facts of the particular Hobbs Act robbery alleged fit the definition of "crime of violence" set forth in § 924(c) belongs to a properly instructed jury. Or where, as here, a defendant pled guilty to a § 924(c) offense predicated on Hobbs Act robbery, it is appropriate for a court to assess whether the underlying facts of the particular commission of Hobbs Act robbery—to which the defendant has admitted—involved "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Indeed, "[t]o conclude otherwise"—to conclude that the categorical approach applies and that a Hobbs Act robbery is not categorically a crime of violence—"would effectively eliminate § 924(c) offenses for cases where the predicate offense is a Hobbs Act robbery, even in the most violent of circumstances." *McDaniels*, 147 F. Supp.3d at 432.

Moreover, there is no need to apply the categorical approach in the present case because the practical considerations that gave rise to the categorical approach in the ACCA sentencing context—which also justify application of the categorical approach in INA context—are not present here. Specifically, in the contexts of the ACCA and the INA, the categorical approach is necessary to avoid the difficult, often impossible, situations where courts would be required to re-try the factual bases for prior convictions. *See Taylor*, 495 U.S. at 600-02. Such practical

---

[29] For example, murder may, in fact, always be committed as a crime of violence, while tax evasion may, in fact, never be committed as a crime of violence (although tax evasion may be a useful crime for convicting violent persons, such as Al Capone).

difficulties are not present where, as here, the factual basis for the predicate offense in issue is initially presented—either during trial or during a plea hearing—along with the §924(c) charge against the defendant.

In sum, the "categorical approach," as developed in *Taylor*, 495 U.S. at 598-602, does not apply when determining whether a crime to which a defendant pled guilty qualifies as a crime of violence pursuant to § 924(c). Accordingly, the question whether Hobbs Act robbery qualifies as a § 924(c) crime of violence depends on the facts to which defendant pled guilty, not on an abstract analysis of the elements of Hobbs Act robbery, as would be required under the categorical approach. *See id.*[30]

In this regard, there can be no doubt that the underlying facts of the Hobbs Act robbery that served as predicate offense for defendant's § 924(c) convictions qualify as crimes of violence pursuant to the force clause of § 924(c) because defendant's crime entailed "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Indeed, with respect to defendant's Hobbs Act robbery offense, defendant admitted that defendant possessed and discharged a firearm in furtherance of a cocaine-related robbery.

**B.**

Even assuming, *arguendo*, that the categorical approach applies here, under that approach, Hobbs Act robbery qualifies as a crime of violence pursuant to the force clause of § 924(c) because the definition of Hobbs Act robbery—"the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury … to his person or property," 18 U.S.C.

---

[30] As already noted, several courts have recently declined to apply the categorical approach to § 924(c). *See supra*, n.22.

§ 1951(b)—entails "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

In opposition to this conclusion, defendant contends that the definition of Hobbs Act robbery does not, in a strict sense, entail the use or threatened use of physical force against another, as that statute can be violated by other means. In support of this contention, defendant relies on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012). There, the Fourth Circuit addressed whether a defendant's prior conviction under a California statute warranted a sentencing enhancement pursuant to U.S.S.G. § 2L1.2 insofar as the prior crime had an element of "violent force."[31] *Id.* at 167. The California statute under which the defendant had been previously convicted required proof that the defendant willfully threatened to commit a crime that "will result in death or great bodily injury to another." *Id.* at 168 (citing Cal. Penal Code § 422(a)). The Fourth Circuit held that the California offense was missing a "violent force" element, and therefore did not qualify as a "crime of violence" for sentencing purposes because the threat of *any bodily injury*, "even serious bodily injury or death," does not necessarily require the use of physical force, let alone "violent force." *Id.* at 168-69. As an example, the Fourth Circuit noted that a defendant could violate the California statute "by poisoning another, which involves no use or threatened use of force." *Id.* (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

Importantly, however, as several courts have recognized, the Supreme Court recently rejected the rationale of *Torres-Miguel* in *United States v. Castleman*, 134 S. Ct. 1405, 1415

---

[31] Specifically, § 2L1.2 defines "[c]rime of violence" as an "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2.

(2014).[32] At issue in *Castleman* was a " 'crime of domestic violence' " statute, which included as an element " 'the use or attempted use of physical force.' " *Id.* at 1407 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). The defendant in *Castleman* argued that "although poison may have forceful physical properties as a matter of organic chemistry, ... no one would say that a poisoner [use]s force or carries out a purpose by means of force when he or she sprinkles poison in a victim's drink." *Id.* at 1415. The Supreme Court squarely rejected this argument, reasoning that "[t]he use of force ... is not the act of sprinkling the poison," but "the act of employing poison knowingly as a device to cause physical harm." *Id.* The Supreme Court further explained that "it does not matter" that "the harm occurs indirectly, rather than directly," noting that under the defendant's reasoning, "one could say that pulling the trigger on a gun is not the 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* The Supreme Court's reasoning in *Castleman* applies here and requires rejection of defendant's argument based on the *Torres-Miguel* decision.

Moreover, Hobbs Act robbery clearly qualifies as a crime of violence under the force clause of § 924(c) because the definition of Hobbs Act robbery tracks the definition of common-law-robbery,[33] which reflects the content of the force clause. The Fourth Circuit has held that common-law robbery is "the taking, with intent to steal, of the personal property of another, from

---

[32] *See, e.g., McDaniels,* 147 F. Supp.3d at 433-35 (explaining that *Castleman* implicitly rejected the reasoning of *Torres-Miguel*); *United States v. Clarke,* --- F. Supp.3d ---, No. JKB-15-503, 2016 WL 1110306, at *6 (D. Md. Mar. 22, 2016) (noting that *Castleman* "eroded" the reasoning of *Torres-Miguel*); *United States v. Walker,* No. 3:15cr49, 2016 WL 153088, at *5 n.15 (E.D. Va. Jan. 12, 2016) (same). *But see United States v. McNeal,* 818 F.3d 141, 156 n.10 (4th Cir. 2016) (noting in dictum that *Torres-Miguel* may remain good law after *Castleman*).

[33] *See, e.g., United States v. Walker,* 595 F.3d 441, 446 (2d Cir. 2010) (" 'The common law crime of robbery and the various federal statutory offenses of robbery have substantially the same essential elements.' ") (quoting *United States v. W.T.T.,* 800 F.2d 780, 783 (8th Cir. 1986)). *Cf. Sekhar v. United States,* 133 S. Ct. 2720, 2724 (2013) (interpreting Hobbs Act extortion as adopting common-law standards).

his person or in his presence, against his will, by violence or intimidation." *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995). Importantly, "[v]iolence" is defined as "the use of force" and "[i]ntimidation" is defined as "the threat of the use of force." *Id.* at 69.[34] The Hobbs Act uses the phrase "fear of injury" rather than "intimidation," but these terms are functionally equivalent, as the test for intimidation is "whether an ordinary person ... reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrup*, 86 F.3d 359, 363-64 (4th Cir. 1996) (internal quotation marks and citation omitted).

Ample case law confirms the conclusion that Hobbs Act robbery can serve as a crime of violence as defined by the force clause of § 924(c). Indeed, a Hobbs Act robbery served as the predicate offense for a § 924(c) conviction in a Supreme Court case decided after *Miguel-Torres*. *See Alleyne*, 133 S. Ct. at 2155, 2162-63 (reviewing a § 924(c) conviction for which Hobbs Act robbery served as the predicate offense and holding that each element of the § 924(c) offense had to be submitted to the jury). Moreover, other circuits have consistently affirmed § 924(c) convictions where the predicate offense is a Hobbs Act robbery,[35] and district courts in this circuit have consistently reached the same conclusion.[36]

---

[34] *See also* 2 Blackstone, Commentaries on the Laws of England 242 (Dooley 3d ed. 1884) (defining robbery as "the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting him in fear")

[35] *See, e.g., United States v. Maddox*, 803 F.3d 1215, 1217 (11th Cir. 2015); *United States v. McBride*, 625 F. App'x 61, 62-63 (3d Cir. Aug. 24, 2015); *United States v. Richardson*, 793 F.3d 612, 617 (6th Cir. 2015); *United States v. Adams*, 789 F.3d 713, 713 (7th Cir. 2015); *United States v. Kennedy*, 133 F.3d 53, 58 (D.C. Cir. 1998); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993).

[36] *See, e.g., McDaniels*, 147 F. Supp.3d at 434-35; *United States v. Strandberry*, 139 F. Supp.3d 734, 740 (E.D. Va. 2015); *United States v. Bennett*, No. 3:15cr134, 2016 WL 354753, at *5 (E.D. Va. Jan 27, 2016); *United States v. Walker*, No. 3:15cr, 2016 WL 153088, *5-6 (E.D. Va. Jan. 12, 2016).

Thus, even assuming that the categorical approach applies here, Hobbs Act robbery qualifies as a crime of violence pursuant to the force clause of § 924(c) because the definition of Hobbs Act robbery entails "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Specifically, Hobbs Act robbery is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury ... to his person or property." 18 U.S.C. § 1951(b).

In sum, assuming, *arguendo*, that defendant's *Johnson* claim is timely pursuant to § 2255(f), his § 2255 motion nonetheless fails because defendant's § 924(c) conviction does not depend on the residual clause of § 924(c); instead, defendant's § 924(c) conviction is based on a Hobbs Act robbery offense, which is unquestionably a crime of violence pursuant to the force clause set forth in § 924(c).

IV.

Accordingly, the government's motion to dismiss must be granted, and defendant's § 2255 motion must be denied because that motion is untimely pursuant to § 2255(f)(3) and because defendant's § 924(c) conviction does not depend on the residual clause of § 924(c).

An appropriate Order has issued.


Alexandria, Virginia
September 8, 2016

/s/

T. S. Ellis, III
United States District Judge


28